[L. A. No. 1684.   In Bank.—March 28, 1907.] '

R. J. HIPWELL et al., Appellants, v. PIONEER INVEST-
MENT AND TRUST COMPANY (a Corporation),
Respondent.

CONTRACT TO ENGAGE IN REAL ESTATE BROKERAGE BUSINESS CONSTRUED
—INDIVIDUAL SPECULATION.—Upon a construction of the contract
sued on, whereby the parties agreed to engage in a "general real

estate, rental, collection, and insurance business,'' and to divide the profits resulting therefrom, *held*, that the contract did not contemplate anything more than the usual brokerage business conducted by real estate and insurance agents, and did not entitle plaintiffs to a share of the profits resulting from the purchase and sale of land by the defendant on its own account.

APPEAL from a judgment of the Superior Court of Los Angeles County. N. P. Conrey, Judge.

The facts are stated in the opinion of the court.

Hunsaker & Britt, for Appellants.

John S. Chapman, John D. Pope, and T. C. Thornton, for Respondent.

BEATTY, C. J.—In October, 1892, the parties to this action entered into a contract in writing as follows:—

"This agreement made and entered into this 16th day of October, 1902, by and between the Pioneer Investment and Trust Company, a corporation, party of the first part, and R. J. Hipwell and T. R. Grandstaff, parties of the second part, witnesseth:

"That, whereas said party of the first part is desirous of establishing in connection with its stock and bond brokerage, corporate agency and promotion business, a real estate department, for the purpose of carrying on and conducting, in the city of Los Angeles and elsewhere, a general real estate, rental, collection and insurance business; and,

"Whereas, the parties of the second part are desirous of taking charge of and managing and conducting said real estate department for and on behalf of and in conjunction with the party of the first part;

"Now, therefore, the party of the first part agrees to furnish and equip a suitable room, in connection with its general offices in said city of Los Angeles for the use of said parties of the second part in conducting said real estate business, and it is also agreed that said party of the first part pay all reasonable expenses of maintaining the same, such as rent, telephone, stationery and advertising and make all other outlays necessary or incident to the proper conduct of said real estate business in a businesslike manner.

"The party of the first part further agrees that it will pay and allow said parties of the second part, jointly, as their compensation, and in full for their services for conducting and managing such real estate brokerage business, one half of all commissions, fees, charges or gross profits, of all and every character accruing from sales made or other business pertaining or incident to said real estate department, negotiated by said parties of the second part or either of them, through or in connection with conducting and handling said general real estate agency business.

"The parties of the second part agree that they will faithfully devote their whole time during reasonable business hours, and will exert their best endeavors toward conducting the affairs of said real estate department in a businesslike manner and for the best mutual interests of all parties hereto, and they further agree that they will accept, in full payment for their said services, the said one half of the gross receipts of all said business negotiated, handled and conducted by them as hereinbefore expressed.

"It is further agreed that the business of said real estate department shall consist in buying, selling, owning, handling or otherwise dealing in real estate or real property or interests therein, as a real estate agent or broker; acting as a general insurance agent in negotiating and placing fire insurance on all and every character of property either as broker for insurance companies or representative of other agents for such companies; acting as agent for owners of real property in renting or leasing same and collecting and accounting for the rentals or other profits thereof; and said business of said department shall in no wise be construed to include the stock, bond, brokerage or other business of said party of the first part and the proportion of profit accruing to the parties of the second part shall bear no relation thereto.

"It is further agreed that all the business of said real estate department shall be conducted in, by and under the name of the party of the first part as a corporation, and that the parties of the second part shall act in all things pertaining to conducting said real estate department, by, through and with the general direction of the officers of the party of the first part.

"It is further agreed that all profits accruing from such business, so handled or negotiated by the parties of the second

part, and all record of business pertaining thereto shall be reported as soon as practicable to the secretary or other authorized officer of said party of the first part, and the record thereof kept, and all moneys or property incident thereto handled, in pursuance of the by-laws and authorized orders of the board of directors of said party of the first part.

"It is further agreed that the profits from which said parties of the second part shall receive their share or division, as aforesaid, shall include profits arising from the transaction of the business of said department, whether the same be brought in or negotiated by said parties of the second part or by any of the officers of the party of the first part.

"The life of this contract shall be one year from date subject to revocation or amendment by said parties hereto.

"In witness whereof," etc.

Pursuant to said contract a "real estate department" of defendant's business was established and put in charge of the plaintiffs, but it does not appear that they transacted any business except that out of which this litigation has arisen. Very soon after the date of the contract they negotiated for the purchase by defendant of a tract of land in the city of Los Angeles, which was surveyed, subdivided into lots, and mapped as the Hollenbeck Heights tract. The plaintiff Hipwell took actual charge on the ground of the work of surveying, grading of streets, and sidewalking said tract, and had personal supervision and charge of the grading outfit and of the working force during those necessary preliminaries to the marketing of the lots. When the lots were put upon the market, defendant sought and obtained from plaintiffs permission for the employment of outside brokers, and the allowance of commissions to them on such sales as they should make. All but eleven of the lots were sold for about $12,267. They had cost, including purchase price of the tract and expense of subdividing, grading, etc., about $8,639, so that the profits of the speculation amounted to $3,628.

Plaintiffs asserted a claim under the contract to one half of these profits. Defendant denied their claim to a share of the profits of the speculation, contending that under the contract they were entitled to no more than one half of the

commissions on the sales that had been made. As a result of this difference, defendant, on the 1st of February, 1903, terminated the contract, and plaintiffs commenced the present suit for an accounting of the profits of the transaction here detailed, and for a recovery of the one half, which they contend they are entitled to under the terms of the agreement as above set forth. Defendant answered, defending the action upon its construction of the contract, and the superior court, upon findings of fact which are substantially embodied in the foregoing statement, sustained the defense, giving judgment to the plaintiffs for only a small balance found due for commissions, without costs. The appeal is from the judgment alone, and presents the single question of the true construction of the written agreement.

Looking alone to the terms of the writing, its meaning cannot be said to be entirely clear, but the weight of the argument, I think, is very decidedly in favor of the construction placed upon it by the superior court. The "general real estate, rental, collection and insurance business," to be added as a department to the established business of the defendant, does not, *ex vi termini*, imply, and certainly does not express, anything more than the usual brokerage business conducted by real estate and insurance agents, and we find in a subsequent clause that the business is expressly designated as "such real estate brokerage business" in immediate connection with the stipulation fixing the compensation of the plaintiffs for their services, which is to be "one half of all commissions, fees, charges, *or*" (not *and*) "gross profits of all and every character arising from the sales," etc. Here, it will be seen, commissions, fees, and charges, according to the grammatical construction of the sentence, are made the equivalent of gross profits, and those words have no application to the selling price of lands, or to the difference between the purchase price and the selling price.

But counsel for appellants strongly insist that in another and subsequent clause of the agreement the parties have given, as they had a right to do, a definition of the purpose and scope of their contract, which, so far as it is unambiguous, the court is bound to accept. The legal proposition is conceded, but it is denied by respondent that the definition in question is unambiguous or at all in conflict with what appears

in the previous clause. The language of the clause here referred to is: "It is further agreed that the business of said real estate department shall consist in buying, selling, owning, handling, or otherwise dealing in real estate, or real property, or interests therein, *as a real estate agent or broker,*" etc. I have italicized those parts of this clause to which the respective parties attach peculiar importance. Respondent contending that the words "as real estate agent or broker" qualify everything that goes before, while the argument on the other side is that it would be absurd to connect them with the word "owning," for the reason that there can be no such thing as owning property in the capacity of broker. It cannot be denied that grammatically the last words of the clause do qualify all that precedes them, and it is equally undeniable that to allow them that effect as to the word "owning," is to produce a legal absurdity. The result, however, is simply to add an ambiguity to what is otherwise clear, and this requires the rejection of the ambiguity. But even if the word "owning" should be taken by itself, detached from its context, it is clear that all the other words, "buying, selling," etc., are qualified by the words "as a real estate agent and broker," and this renders the word "owning" entirely meaningless, for the mere owning of property is not a business or any part of a business. Especially it is not a business involving fees, charges, commissions, or profits, gross or net. Nothing is to be gained, I think, by further attempts at mere verbal analysis of this clause of the agreement. There is, in my opinion, a more conclusive argument against the construction contended for by appellants in the fact that the agreement is perfectly silent as to the manner in which funds are to be provided for the purchase of property by the department. If, as contended, it was the understanding that, in addition to its brokerage and agency business, the department was to engage in the purchase and sale of real property on its own account, it seems incredible that parties stipulating so · carefully, and with such redundancy of words regarding other matters, and so explicitly enumerating the various items of office expenses to be borne by defendant, should have omitted to make any provision for raising or advancing the funds necessary to effect the contemplated purchases. Upon this point I have

not failed to consider the argument of counsel that the advance of the necessary funds for this purpose by the defendant is stipulated in the general words of the third clause of the contract: "and make all other outlays necessary or incident to the proper conduct of the said real estate business in a businesslike manner." I think, however, that these words, taken in the connection in which they occur, and with the qualification which they contain, cannot be held to refer to anything except the expenses of conducting the business of the office. They are to be construed according to the maxim *Noscitur a sociis*, and cannot be extended so as to comprehend an obligation on the part of defendant to provide all the purchase money for contemplated purchases of property to be improved and sold on speculation.

Another argument in favor of appellants' contention is based upon the frequent occurrence of the word "profits" in the agreement, the argument being that it is a word fitly used in reference to the excess of the selling price of land or other commodity over cost, but is not properly descriptive of the earnings of a broker in the form of commissions, fees, etc.

It seems a sufficient answer to this argument to say that in a contract like this, the fees and commissions of the brokers, being the profits of the business, are properly so designated.

It is further contended, and must be conceded, that in construing a contract, the situation of the parties—the surrounding circumstances — must be considered, and it is claimed that the court cannot put itself in the position of these parties without taking judicial notice that by the prevailing custom a general real estate business, especially in Los Angeles for several years prior to October, 1902, has comprehended not only agency or brokerage in the purchase and sale of lands, but purchase and sale on account of the broker or firm of brokers. Without deciding the legal proposition involved in this argument, it may be conceded for the purposes of this decision that the parties to this agreement were well informed of the custom said to have been prevalent among real estate brokers in Los Angeles of combining with their brokerage business ventures on their own account. But on this supposition it seems all the more strange that if they expected to conform to the custom they should have omitted all provision

for the contribution of the purchase money necessary in such ventures. If they knew that they could combine speculation with agency, they knew equally well that they could confine themselves to agency, and, from the terms of their agreement, it would seem that they did so.

The contention of appellants that it is altogether unreasonable to suppose that they would have entered into this agreement to give their whole time to the business of the department for one half of the commissions when they could have gone into business by themselves and retained the whole of the commissions, rests upon the ·assumption that they could foresee the failure of the projected brokerage business which they had in contemplation. No doubt they expected success where they encountered only failure. Perhaps they were without the necessary means to provide an office and pay the expenses involved in what appears to have been an experiment to last for a year—the business to be continued or abandoned according to the results. If they had made the experiment upon their own resources, their small gains might have netted a considerable loss. Conducted as it was, in connection with the defendant, the only business the department ever did (so far as appears) was the negotiation of the purchase and sale of this Hollenbeck Heights tract—property purchased and improved by the defendant with its own funds and at its own risk. It does not seem to be a valid ground of complaint on the part of the plaintiffs that the defendant gave them the only opportunity they had to make any earnings at all during the fourteen weeks the business continued. The only remaining argument in support of the appeal which seems of sufficient importance to demand particular consideration is based upon the merely probative facts found by the court that the plaintiff Hipwell personally superintended the subdivision of the tract and the grading and sidewalking of the streets, and that the defendant sought and obtained the consent of the plaintiffs to the employment of outside brokers to negotiate sales. This it is contended shows the practical construction of the contract by the parties, and that they understood that the profits of the speculation were to be shared equally between them. But the court does not so find, and its conclusion as to the proper construction of the agreement cannot be set aside on the strength of these

findings, unless they are absolutely and fatally inconsistent with that conclusion.   No such inconsistency is apparent. Assuming the contract to have been confined to a brokerage business, there is nothing inconsistent in the fact that the defendant, on the suggestion of plaintiffs, should have bought the Hollenbeck tract and prepared it for sale at its own expense and risk.   Nothing in the contract excluded it from engaging in such a venture, and nothing in the contract required it to share the gains of the speculation, any more than it requires the plaintiffs to bear a share of the loss.   That Hipwell should have superintended the subdivision of the tract, the grading, etc., is not surprising, if his department was to have commissions on the sale of the lots, especially considering that the department had nothing to do until the subdivision, grading, etc., was complete, and these lots in a condition to be put upon the market.   And if he did superintend the preparation of the lots for sale, upon an understanding, tacit· or otherwise, that the department was to negotiate the sales, it was natural that defendant should ask the consent of plaintiffs to the employment of outside brokers, and the payment to them of a portion of the commissions. In view of these considerations, it cannot be held that there is any fatal inconsistency between these probative facts and the conclusion of the superior court that the contract of the parties did not cover the profit of the Hollenbeck tract venture.

The judgment of the superior court is affirmed.

McFarland, J., Angellotti, J., and Lorigan, J., concurred.

Shaw, J., and Sloss, J., dissented.